## KALAMAZOO CORSET CO. v. SIMON.

(Circuit Court, E. D. Wisconsin. March 20, 1903.)

1. CONTRACTS—CONSTRUCTION—USAGE.

While proof of a general usage is admissible to explain a contract, in the absence of express stipulations, or where the meaning of the parties is uncertain, from the language used, usage cannot be shown to vary the legal import of the contract as made, or to add new terms thereto.

2. SAME—APPLICATION OF USAGE.

Where numerous lots of corsets were offered for sale by letter as a "job lot" and as an entirety, the letter stating that "the enclosed stock sheet shows the quantity of each style and color," and that "the proportion of sizes," as shown, "is nearly perfect," which offer defendant declined, but selected and offered to take three of the lots as specified in the stock sheet, the acceptance of defendant's offer made a contract based on express stipulations, which was not within a usage that, in the purchase of job lots, the buyer is not obligated if the variation in the deliveries is considerable, and that it rests with the buyer to determine whether the discrepancy is reasonable or unreasonable.

3. SAME—VALIDITY—DEFINITENESS.

A usage that, in sales of job lots of goods, the buyer is not obligated if the variation in the quantity delivered is considerable, and that it rests with the buyer to determine whether the discrepancy is reasonable or unreasonable, no definite test being recognized, is invalid for uncertainty.

4. SAME—PERFORMANCE OF CONTRACT—SUBSTANTIAL VARIATIONS.

Where defendant purchased three job lots of corsets, represented on plaintiff's stock list as containing $251^{10}/_{12}$ doz., $204^{11}/_{12}$ doz., and $80^{9}/_{12}$ doz., and the deliveries offered contained $266\frac{1}{3}$ doz., $267^{1}/_{12}$ doz., and 78 doz., the variance was substantial, and entitled the buyer to refuse acceptance.

5. SAME—QUESTION FOR COURT.

Where, in an action for breach of a contract of sale, the facts were undisputed, and a verdict for plaintiff would be unsupported by testimony or legitimate inference from any fact in evidence, it was proper for the court to determine the same without submitting it to the jury.

6. SAME—WAIVER.

Where defendant agreed to purchase certain job lots of corsets according to a stock sheet showing the quantities, he did not waive his right to refuse to accept because of a material variance in the quantities delivered, by his mentioning only his own mistake in ordering one of the lots, when he intended to order another, which the seller refused to permit him to correct.

On Motion for New Trial.

Durant, Price & Cowen, for plaintiff.

Winkler, Flanders, Smith, Bottom & Vilas, for defendant.

SEAMAN, District Judge. The suit is for breach of contract of purchase, by refusal to accept the goods tendered as a delivery. The contract is in writing for the purchase of a large quantity of corsets

from the manufacturer, designated in the pleadings as a "job lot" or "job lots," and the facts are undisputed. Verdict was directed in favor of the defendant upon the ground that the goods tendered for delivery greatly exceeded the terms of the order in two of the lot numbers, and were slightly deficient in the other number. As the goods varied in size and color in each lot, and came intermingled, so that several days' work was involved in checking and storing, the defendant was justified in the rejection, if the letter of the contract governs the issue. The plaintiff made an offer by letter to close out numerous lots of corsets, each bearing a descriptive number, at prices named for each, inclosing a "stock sheet," which, the letter stated, "shows the quantity of each style and color. You will observe the proportion of sizes is nearly perfect." The defendant answered with an offer for three of the lots—Nos. 79, 20 and 249—referring to the stock list, at prices named by him, but refusing the others, and this was accepted. In the stock list, No. 79 contained $251^{10}/_{12}$ doz.; No. 20 contained $204^{11}/_{12}$ doz.; and No. 249, $80^{9}/_{12}$ doz. The plaintiff sent instead of No. 79, $266\frac{1}{3}$ doz.; of No. 20, $267^{1}/_{12}$ doz.; and No. 249, 78 doz. Under well-settled rules, this tender is not performance of the contract, unless (1) the contract terms are subject to modification by the proof admitted of general custom in respect of job-lot transactions; and (2) the performance appears to be within a valid general custom or usage applicable thereto.

1. Proof of a general usage is admissible to explain a contract, either "in the absence of express stipulations, or where the meaning of the parties is uncertain upon the language used, and where the usage of the trade to which the contract relates, or with reference to which it was made, may afford explanation and supply deficiencies in the instrument." Oelricks v. Ford, 23 How. 49, 63, 16 L. Ed. 534, 5 Rose's Notes (U. S.) 966. So it may be that reference to a "stock sheet" in a simple offer and acceptance of a job lot may thus be open to explanation where no express stipulations appear to govern the interpretation. Nevertheless the rule stated by Mr. Justice Story in The Reeside, 2 Sumn. 567, Fed. Cas. No. 11,657—approved in De Witt v. Berry, 134 U. S. 306, 312, 10 Sup. Ct. 536, 33 L. Ed. 896—appears to prevail, namely, "that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and a fortiori not in order to contradict them. An express contract of the parties is always admissible to supersede or vary or control a usage or custom." As stated in De Witt v. Berry, supra, "While parol evidence is sometimes admissible to explain such terms in the contract as are doubtful, it is not admissible to contradict what is plain, or to add new terms." Usage cannot be shown to vary the legal import of the contract as made. 27 Am. & Eng. Encyc. 862. In the light of these principles I am of opinion that the terms of reference to the stock sheet in each of the letters constituting the contract in question exclude the custom from consideration, even if the custom as shown is otherwise applicable to the transaction.

2. On the other hand, the custom stated by the witnesses cannot affect the contract for two reasons, at least: (1) Because the transaction

was not the ordinary job-lot sale to which the testimony of usage relates; and (2) because the terms of the usage are either too uncertain to admit of its consideration, or exclude the case of large excess shown in two of these lots.    (1) The only transaction to which the testimony of usage can be deemed applicable is one of simple offer and acceptance of a recognized job lot upon the mere exhibition of a stock sheet, usually in the hands of a traveling salesman for that purpose.    Here numerous lots were offered by letter, as a job lot and as an entirety, stating that "the enclosed stock sheet shows the quantity of each style and color," and that "the proportion of sizes," as shown, "is nearly perfect."    The defendant declined this offer, but selected and offered to take three of the lots as specified in the stock list.    Acceptance of this offer made the contract upon that basis as one of express stipulations, and not within the alleged usage.    (2) In any view, however, the testimony concurs in the requirement that the stock sheet must show approximately the quantity of goods in the lot offered for sale, the only variations being for diminution or increase naturally arising in due course of the business before the sale is consummated; and the two disinterested witnesses concur in testifying that the buyer is not obligated under the custom if the variation is considerable, and that it rests "with the buyer to determine whether the discrepancy is reasonable or unreasonable," no definite test being recognized.    On the last-mentioned version of the custom—shown on legitimate cross-examination, as I understand its import—uncertainty in its terms and obligation clearly bars it from entering into the alleged sale.    Oelricks v. Ford, 23 How. 62, 16 L. Ed. 534.    There was no meeting of the minds of parties upon the subject-matter to make an executory contract.    It is true that a valid contract could be made for a specific lot, though the quantity was undetermined; that it could be made for such quantity as was produced or remained on hand at a given time or event.    The quantity would then be determined by the event.    But no such contract is made by the alleged usage.    No such test is made binding.    The question whether the quantity conformed to the offer and acceptance was contingent upon the buyer's view whether the variance was reasonable or unreasonable, and in any aspect no definite test was provided.    Treated as "an absolute contract for a specific quantity within a reasonable limit" (Cabot v. Winsor, 1 Allen, 546, 551), it is plain that the variance is substantial.    The facts being undisputed, the question thereupon was rightly determined by the court without submission to the jury.    Cabot v. Winsor, supra.    A verdict contra would be unsupported by testimony or by legitimate inference from any fact in evidence.

The contention that the defendant waived this defect by mentioning only the mistake made by him in ordering No. 79, when he intended No. 179, is not tenable.    It is probable that he would have waived if that correction had been allowed, but it is clear that he did not do so when they refused, and he had ascertained the true state of facts.

The motion for a new trial is denied, and judgment will enter upon the verdict.